THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* JAMES W. CLARK, Appellant.

*Court of Appeals, June 22, 1886.*

Affirming same case, 38 Hun, 214.

1. *Evidence. Error cured.*—An error in the rejection of competent evidence is cured, if the excluded fact is afterwards fully proved, or an opportunity given to the injured party to secure an answer from the witness to the very inquiry which had been previously excluded.
2. *Same.*—Such error is also cured by the proof of the facts sought by the testimony of another witness, and giving the party the full benefit of all possible inferences to which they lead.
3. *Juror. Competency.*—A juror who has an impression as to the guilt or innocence of the prisoner, if he testifies that he will be governed by the evidence, and his previous impression will not influence his verdict, and that it is his belief that he can render an impartial verdict according to the evidence, and that he will give the prisoner the benefit of every reasonable doubt, and acquit him, if such doubt exists, is competent within the established rule.
4. *Separate trial.*—The right of the prosecution to try a prisoner

separately is fixed by statute, and no error was committed in directing the prisoner to be tried separately from the others indicted. with him.

5. *Cross-examination*—How far the cross-examination of a prisoner, as a witness on the trial, may be carried, is necessarily very much in the discretion of the court.

Appeal from a judgment of the general term of the supreme court, affirming a judgment of conviction for obtaining property by means of false and fraudulent representations, and from an order denying defendant's motion for a new trial.

*Wm. G. Tracey*, for appellant.

*B. J. Shove*, for respondent.

FINCH, J.—The defendant was convicted upon an indictment which charged him with having obtained a conveyance of land from one John Fay by false pretenses, which consisted in inducing him to accept, as part payment, a mortgage for $2,000 upon 100 acres of land in Ulster county, which the prisoner falsely described in many material respects, and which were in fact of very trifling value.

The party defrauded was a witness for the prosecution, and on cross-examination was asked a series of questions, the purpose of which was to extract from him an admission that before the bargain was closed he had been advised by his counsel not to accept the mortgage without an examination of the land. If he made the admission, it would bear upon the question of his own possible negligence, and, if he denied it, there would be left the opportunity for contradiction. The evidence was rejected, and the general term, conceding that this was error, answer it by saying that the excluded fact was afterwards fully proved. On cross-examination of Mr. Ames, who was Fay's counsel in the transaction, he testified distinctly and fully to the fact of having given him such advice; and at the close of the case for the prosecution the prisoner's counsel rested upon

the undisputed fact thus established as one ground of his motion for the discharge of the prisoner. During the further progress of the trial the same thing was again proved by a partner of Ames, and by a clerk in their office. But, at least, the fact was in part disputed, and it is that circumstance which the learned counsel for the appellant contends defeats the force and correctness of the argument that no injury resulted from the original rejection of the evidence. The dispute, however, arose in this way: The prosecution recalled Fay, and put to him the substantial question which had before been held improper. This time the defendant had the opportunity to secure an answer from the witness to the very inquiry which he had made in vain. If he wanted an answer, he could have had it, but he objected, and strove to prevent an answer being given. He partially succeeded, and by reason of his objection the question was narrowed to the inquiry as to the advice given by Ames in a particular conversation, and, in reply, the witness denied that it occurred before the consummation of the bargain. The defendant thus stands before us complaining that a question was not answered which was answered in part, and, so far as not answered, was left in that situation by his own objection. The two purposes originally sought were reached. The prosecutor was made to answer whether he received the advice claimed before the bargain was closed, and his denial exposed him to the contradiction as fully brought out as under any circumstances was possible. It is quite clear that no harm resulted from the original error, and that it became entirely immaterial.

It was in a part a theory of the defense that Fay's contract of sales was not with the prisoner, but with one McKinstry, to whom the deed was in fact given; that the mortgage was taken in reliance upon his promise to cash it within a short period, and that the fraud, if there was one, was perpetrated solely by him. As bearing on that theory, the prisoner offered to show, by the cross-examination of Fay,

that when the fraud was discovered, he settled with McKinstry, and got from him $1,000 in discharge of his liability. This evidence did not at all tend to show that the defendant did not make the false representations charged and that Fay did not rely upon them; and was for that reason rejected upon Fay's cross-examination. The subject came up apparently by proof given on behalf of the prosecution, and on the direct examination of Fay, that he had not settled with McKinstry, nor had anybody for him. The cross-examiner, immediately taking up the subject, asked this question: " What was there about the transaction, if anything ? " The court at first thought that in one view it might be competent, and asked counsel to state the purpose for which it was offered. The counsel replied that " it was with a view of shaking the testimony of the witness ;" and then explained that he wanted to show by the witness that such a settlement had been made, and that the trade was with McKinstry. But the witness had just denied the settlement, and a mere repetition of that denial was of no possible moment. If the counsel had stated that something did occur between Fay and McKinstry which he wanted to put before the jury, and had explained what it was so that the court could have seen whether it tended to a contradiction, there would have been a basis for the objection, though even then the difficulty would have remained that the disputed fact was immaterial. It turned out, however, that McKinstry was called by the prosecution, and on cross-examination related, at defendant's request, the whole transaction with Fay. The witness said that he took the deed from Fay as security for $500 of purchase money advanced by him for Clark, and $500 more loaned to him. that he sold the Fay property, and, when the swindle was discovered, restored to Fay the balance of the proceeds received, after deducting the $1,000 advanced to Clark, and the interest thereon. The transaction was thus disclosed,

and whether it amounted to a settlement, and so contradicted Fay, was a question which the defendant's counsel was at liberty to argue. Whether material or not, the facts sought were furnished, and the defendant had the full benefit of all possible inferences to which they led. We do not think there was error in the ruling, but if there was it was fully cured.

No error was committed in accepting the juror Fairbanks as impartial and competent; in directing the prisoner to be tried separately from the others indicted with him; nor in refusing to restrict and narrow the cross-examination of the defendant.

Although the juror had an impression as to the guilt or innocence of the prisoner, he testified that he would be governed by the evidence, and his previous impression would not influence his verdict. He added his belief that he could render an impartial verdict according to the evidence ; and on further examination he said he would give the prisoner the benefit of every reasonable doubt, and acquit him if such doubt existed. The juror was competent within the established rule.

The right of the prosecution to try the prisoner separately is fixed by statute. Code Crim. Pro., § 462.

While the cross-examination of the prisoner was protracted and severe, we do not discover that the limitations of the law were exceeded by asking if he had been accused or charged with anything criminal or disgraceful. The general history and mode of life of the witness threw light upon his character and his degree of intelligence and business experience : while his other dealings with the Ulster county tract bore strongly upon his attempted explanation, and were important facts in judging of its truth. How far such an examination may be carried is necessarily very much in the discretion of the court, and we do not think that such discretion was unwisely exercised.

Several other objections have been examined, but do not strike us as needing discussion.

The judgment should be affirmed.

All concur, except RUGER, C. J., not sitting, and MILLER, J., absent.